```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
RAFAEL TORRES,                                                 :
                    Plaintiff,                                 :
                                                               :
v.                                                             :     OPINION AND ORDER
                                                               :
                                                               :     18 CV 4311 (VB)
CORRECT CARE SOLUTIONS, LLC and                                :
ELIZABETH KULESZA, Doctor,                                     :
                    Defendants.                                :
--------------------------------------------------------------x
```

Briccetti, J.:

  Plaintiff Rafael Torres, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983 against defendants Correct Care Solutions, LLC ("CCS"), and Dr. Elizabeth Kulesza. Plaintiff alleges defendants were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment.

  Now pending is defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6). (Doc. #40).

  For the reasons set forth below, the motion is GRANTED.

  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

I.  Procedural History

  Plaintiff commenced this action on May 15, 2018, alleging defendants, in failing to treat his swollen knee timely or properly while he was detained at Orange County Jail ("OCJ"), were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment. Defendants moved to dismiss plaintiff's complaint for failure to state a claim.

1

The Court granted defendants' motion in an Opinion and Order dated June 19, 2019. Torres v. Correct Care Sols., LLC, 2019 WL 2525418 (S.D.N.Y. June 19, 2019).[1] However, the Court also granted plaintiff leave to amend his Fourteenth Amendment deliberate indifference claim against Dr. Kulesza and CCS, to the extent plaintiff could do so "clearly, concisely, truthfully, and plausibly." Id. at *5.[2] The Court identified the deficiencies in plaintiff's complaint and ordered plaintiff to address them in his amended complaint. Id. at *5. The Court also stated in bold typeface that "the amended complaint will completely replace, not supplement, the existing complaint" and directed plaintiff to include in the amended complaint "all information necessary for his claims." Id. at *6.

On August 21, 2019, plaintiff filed an amended complaint. In addition to containing allegations regarding treatment of plaintiff's left swollen knee in April 2018, the amended complaint also contains allegations that prison personnel other than Dr. Kulesza denied plaintiff (i) prescribed medication on several occasions in February and March 2018, and (ii) a May 2018 visit to an off-site orthopedist because he was transferred to a different facility before the scheduled visit. It also includes allegations regarding his medical treatment after his transfer out of OCJ. On August 27, 2019, the Court instructed the Clerk to terminate all defendants named in the amended complaint other than Dr. Kulesza and CCS, because the Court did not grant plaintiff leave to amend to bring claims based on additional incidents against new defendants, but only granted plaintiff leave to amend his Fourteenth Amendment deliberate indifference claim as

---

[1] Because plaintiff is proceeding pro se, he will be provided copies of all unpublished opinions cited in this ruling. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

2

against Dr. Kulesza and CCS.  (Doc. #38); Torres v. Correct Care Sols., LLC, 2019 WL 2525418, at *5.

II.     Factual Background

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as set forth below.

At all relevant times, plaintiff was confined at OCJ.

Plaintiff alleges that on April 13, 2018, starting at approximately 7:30 a.m., and continuing throughout the day, he experienced severe pain in his swollen left knee.  He alleges that the pain was so severe that he could not sleep.  Plaintiff claims he complained to several prison personnel, including corrections officers, sergeants, and one nurse.  Plaintiff further alleges that despite his complaints, he was not taken to the medical department.  Plaintiff claims he submitted a sick call slip for his knee on April 13.

Plaintiff alleges that on April 14, 2018, he went to the medical department and was seen by non-party Gildea, whom he told about the pain in his swollen left knee.  According to plaintiff, at first, Gildea would not examine his knee because, as she told him, he was there only to have his blood pressure checked and he was already on pain medication.  However, plaintiff alleges Gildea ultimately looked at the knee and told him to "stay off of it till [sic] they get you." (Doc. #37 ("Am. Compl.") at ECF 15).[3]

Plaintiff alleges Gildea then called Dr. Kulesza into the exam room to discuss his blood pressure.  Plaintiff claims he asked Gildea and Dr. Kulesza to "take care of his knee as well or to

---

[3]   "Doc. #__ at ECF __" refers to document numbers and page numbers automatically assigned by the Court's Electronic Case Filing system.

send him to the hospital" because of his high blood pressure and knee pain. (Am. Compl. at ECF 15). Plaintiff alleges Dr. Kulesza examined his swollen knee, told plaintiff to continue taking his pain medication, and gave him a dose of Hydrochlorothiazide ("HCTZ") 25mg.[4]

According to plaintiff, he told Dr. Kulesza that the pain medication was ineffective in controlling the knee pain and that his blood pressure had been dangerously high since December 12, 2017. Plaintiff alleges Dr. Kulesza did not provide further medical care and instead told him, "that's all she is allowed to do for plaintiff today." (Am. Compl. at ECF 16). Plaintiff says he again asked to be sent to the hospital, but Dr. Kulesza responded there was no need to send plaintiff to the hospital and that the medication should help. Plaintiff also alleges he asked Dr. Kulesza for a cane and knee brace, but she provided neither. Plaintiff alleges that although he was able to walk without a cane, it was painful.

Plaintiff says he was not seen by a doctor again until April 20, 2018, even though his knee pain persisted. Plaintiff alleges that on April 20, Dr. Kulesza prescribed plaintiff "the same Motrin 600 mg" he had been taking, which "had no effect" on his knee pain. (Am. Compl. at ECF 17). In addition, plaintiff alleges Dr. Kulesza gave him arthritis cream and a knee brace.

Plaintiff further alleges that on April 25, 2018, non-party Sergeant Lyons sent plaintiff to the medical department because of his knee pain. Plaintiff claims he was given ice but told he had to wait until the following day to see the doctor, because he was already scheduled to see the doctor the following day.

---

[4] Publicly-available research indicates HCTZ is a diuretic used to treat high blood pressure and reduce fluid retention. It can reduce swelling. See Hydrochlorothiazide, https://www.webmd.com/drugs/2/drug-5310/hydrochlorothiazide-oral/details (last visited June 4, 2020).

Plaintiff alleges that on April 26, 2018, he was given a cane. Plaintiff also alleges he had physical therapy sessions on April 27, 2018, and May 4, 2018. Nevertheless, plaintiff alleges he was not given proper medical treatment, including an MRI, even though such treatment was necessary to address his pain.

In plaintiff's opposition to the motion to dismiss, plaintiff newly alleges that Dr. Kulesza and CCS medical staff "left undiagnosed and untreated" plaintiff's Lyme disease. (Doc. #47 ("Pl. Decl.") at ECF 5); see Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) ("In evaluating the legal sufficiency of a pro se plaintiff's claims, a court may rely on the plaintiff's opposition papers."). Plaintiff also alleges he had suffered from "severe pain, inflamed knee, headaches, cold night sweats and blood pressure of 160/100" in 2018, which he suggests were symptoms of his undiagnosed Lyme disease. (See Pl. Decl. at ECF 28–29). Medical records plaintiff submitted with his opposition indicate plaintiff was diagnosed with Lyme disease in September 2019. (Doc. #49 at 17–19).

## DISCUSSION

I.   Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II.     Deliberate Indifference to Serious Medical Needs

Defendants argue plaintiff fails plausibly to allege a claim for deliberate indifference to his serious medical needs with respect to Dr. Kulesza's allegedly improper treatment of his knee and blood pressure, as well as her misdiagnosis of Lyme disease.

The Court agrees.

A. Legal Standard

Deliberate indifference claims brought by pretrial detainees[5] are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment, because "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). To state a deliberate indifference claim, plaintiff's allegations must satisfy two prongs: an objective prong and a mens rea prong. Id. Namely, plaintiff must plausibly allege "that the challenged conditions were sufficiently serious," and defendants "acted with at least deliberate indifference to the challenged conditions." Id.

To plead the objective prong, a pretrial detainee must plausibly allege the challenged conditions, "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." Darnell v. Pineiro, 849 F.3d at 30. "There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." Id.

In the context of medical care, two inquiries determine whether a deprivation is objectively serious. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). Because "the prison official's duty is only to provide reasonable care," prison officials are liable only if they fail "'to

---

[5] Although plaintiff indicates he is a "convicted and sentenced prisoner" in his amended complaint (Am. Compl. at ECF 3), he also alleges he was a pretrial detainee at the time of the complaint-of conduct (Am. Compl. at ECF 7). Accordingly, the Court assumes for purposes of this motion that plaintiff was a pretrial detainee during the relevant time periods. In any event, because plaintiff's allegations are insufficient to state a claim under the more lenient Fourteenth Amendment standard, they would also be insufficient to state a claim under the Eighth Amendment standard.

7

take reasonable measures' in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious." Salahuddin v. Goord, 467 F.3d at 280.  If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id.  If the offending conduct is the "medical treatment given," however, "the seriousness inquiry is narrower." Id.  When "the prisoner is receiving appropriate on-going treatment for his condition," and brings a "denial of medical care claim based on a temporary delay or interruption in treatment," courts look to "the severity of the temporary deprivation alleged by the prisoner," not "the severity of the prisoner's underlying medical condition." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).

To plead the mens rea prong, a pretrial detainee must plausibly allege "that the defendant-official acted intentionally . . . , or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known," of the risk.  Darnell v. Pineiro, 849 F.3d at 35.  The Fourteenth Amendment's mens rea prong "is defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." Id.

"[D]istinguishing between negligent and reckless medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion." Zhang v. City of New York, 2018 WL 3187343, at *8 (S.D.N.Y. June 28, 2018).  Courts often look to the "degree of risk associated with the negligent treatment" and have found the mens rea prong

8

satisfied when a plaintiff did not receive treatment for a documented condition or complaint. See id. (collecting cases).

Moreover, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to" a constitutional violation. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

B.  Application

Plaintiff's allegations fail to satisfy the mens rea element as to Dr. Kulesza's allegedly improper treatment of his knee and blood pressure, as well as her alleged misdiagnosis of Lyme disease.

Plaintiff's allegations and medical records appended to plaintiff's amended complaint indicate plaintiff was given extensive medical care for his swollen knee and blood pressure, including specifically by Dr. Kulesza.[6]  Plaintiff alleges that on April 14, 2018, Dr. Kulesza examined his knee and determined a visit to the hospital was not then necessary, told him to continue taking his pain medication, and gave him a dose of HCTZ.  Plaintiff further alleges that on April 20, 2018, Dr. Kulesza prescribed plaintiff pain medication, arthritis cream, and a knee brace.  In addition, plaintiff alleges he was given various other types of medical treatment, including periodic blood pressure checks, a cane, two physical therapy sessions, and at least one transcutaneous electrical nerve stimulation ("TENS") treatment.

Plaintiff's allegations that on April 14, 2018, Dr. Kulesza did not comply with his requests to send him to the hospital or provide him with a cane or knee brace, and that plaintiff

---

[6] In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

9

later did not receive an MRI, do not save his deliberate indifference claim. Six days after he requested a knee brace, Dr. Kulesza gave him a knee brace, as well as more pain medication and arthritis cream. And though he does not identify who gave him a cane, plaintiff alleges that another six days later, he was given a cane. Such "disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to" a constitutional violation Chance v. Armstrong, 143 F.3d at 703. Moreover, even if plaintiff alleged Dr. Kulesza was involved in the decision not to give plaintiff an MRI—which he does not— "[w]hether to order an MRI or similar diagnostic treatments is a classic example of a matter for medical judgment." See Victor v. Milicevic, 361 F. App'x 212, 215 (2d Cir. 2010) (summary order).

Furthermore, plaintiff's allegations that Dr. Kulesza failed to diagnose his Lyme disease are conclusory. Beyond alleging she misdiagnosed him, plaintiff makes no specific allegations about why or how she misdiagnosed him. To the extent plaintiff alleges his 2018 symptoms of "severe pain, inflamed knee, headaches, cold night sweats and blood pressure of 160/100" indicated that he had Lyme disease, plaintiff makes no allegations that he told Dr. Kulesza about pain in locations other than his knee, or about any headaches or cold night sweats. (Pl. Decl. at ECF 28). Even if plaintiff's Lyme disease allegations were not conclusory, "allegations of negligent treatment and misdiagnosis do not state a cause of action" under the Fourteenth Amendment. See Harris v. Westchester Cty. Med. Ctr., 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011).

III.    Monell Claims

Plaintiff's claim that CCS has a pattern or policy of denying detainees proper and adequate medical care also fails. Because plaintiff has not adequately pleaded an underlying

violation of his constitutional rights, his Monell claim against CCS must be dismissed. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (district court "was entirely correct" in declining to address Monell claim after finding no underlying constitutional violation). Furthermore, Section 1983 liability cannot be predicated on a theory of respondeat superior. See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

IV.     State Law Claims

Having dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over any state law claims the amended complaint can be liberally read to assert. See 28 U.S.C. § 1367(c)(3).

V.      Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). But "a futile request to replead should be denied." Id. "Plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend." Jeanty v. Newburgh Beacon Bus Corp., 2018 WL 6047832, at *12 (S.D.N.Y. Nov. 19, 2018), appeal dismissed (Mar. 27, 2019).

Here, the Court granted plaintiff leave to amend after granting defendants' motion to dismiss plaintiff's original complaint. Indeed, the Court specifically identified the deficiencies

11

plaintiff would need to address in order to state claims for violations of the Fourteenth Amendment.  Torres v. Correct Care Sols., LLC, 2019 WL 2525418, at *5.  Plaintiff failed to address those deficiencies and "has not suggested he is in possession of facts that would cure the deficiencies identified in this opinion."  Jeanty v. Newburgh Beacon Bus Corp., 2018 WL 6047832, at *12.  The problems with plaintiff's claims are "substantive," such that "better pleading will not cure" them.  Cuoco v. Moritsugu, 222 F.3d at 112.

Accordingly, the Court declines to grant plaintiff leave to amend a second time.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #40) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: June 26, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge